896 F.Supp. 158 (1995)
Kirsten FOULKE, by her next friend, John H. FOULKE, Plaintiff,
v.
Bonnie Ann FOULKE, Angelo J. Ingrassia, and Jeffrey Salant, Defendants.
No. 95 Civ. 6461 (BDP).
United States District Court, S.D. New York.
August 29, 1995.
*159 George L. Barnett, P.C., Brewster, NY, for plaintiff.
Daniel D. Molinoff, Larchmont, NY, for defendant Bonnie Ann Foulke.
David S. Cook, Senior Attorney, New York City, Dennis C. Vacco, Attorney General of the State of New York, Albany, NY, for defendant Angelo J. Ingrassia.

MEMORANDUM OPINION
KAPLAN, District Judge.
This motion, which the Court treats as one for a preliminary injunction, is an unfortunate by-product of a contentious divorce case in the New York State courts in which the five year old child of the marriage unfortunately has become the center of a contest of wills between her parents. The plaintiff claims that he was denied procedural due process by the State court in that no evidentiary hearing was held on his motion for permission to enroll his daughter, over his *160 wife's objection, in a private school. He asks this Court to stay a State court order that denied such permission and to enjoin the defendants from interfering with the proposed enrollment until an evidentiary hearing is held by the State court. The State Supreme Court justice who issued the order is joined as a defendant and cross-moves to dismiss the action as to him.

Facts
The plaintiff, John Foulke, and defendant Bonnie Ann Foulke were married in 1989. Mrs. Foulke gave birth to Kirsten, the subject of this action, in January 1990. In August 1992, Mrs. Foulke sued for divorce in New York Supreme Court, Westchester County, claiming that she was forced to leave the marital residence by reason of Mr. Foulke's allegedly drunken behavior. In 1994, the Foulkes were awarded temporary equal-time joint custody of Kirsten.
Kirsten now is of school age, and Mr. Foulke wishes to enroll her at Rye Country Day School, a prestigious private school. Although Mr. Foulke evidently is not in a position to pay for this costly education, his father has volunteered to do so, at least for the first year. Mrs. Foulke resists Kirsten's enrollment, arguing that she probably would have to return to public schools for financial reasons at some point and that the trauma of such an eventuality would be so great that the child will be better off staying in the public schools from the outset.
Given Mrs. Foulke's resistance, Mr. Foulke moved in May 1995 before Justice Angelo J. Ingrassia for an order permitting Kirsten to enroll at Rye Country Day. Mrs. Foulke opposed the motion, which was denied in a memorandum decision dated June 8, 1995. Significantly, Mr. Foulke did not seek an evidentiary hearing on the motion. Mr. Foulke then appealed to the Appellate Division, Second Department, on June 12, 1995. Three days later, he sought leave to renew his application before Justice Ingrassia and, on July 5, 1995, he moved in the Second Department for an expedited appeal. Both motions were denied, the first in July and the second on August 4, 1995. Despite this flurry of activity, however, Mr. Foulke has not sought from the State courts a stay of Justice Ingrassia's order (or, more properly, an injunction permitting Kirsten's enrollment) pending the State court appeal.
Plaintiff commenced this action on or about August 16, 1995, claiming that the State court's failure to hold an evidentiary hearing on the motion for permission to enroll Kirsten at Rye Country Day deprived her of the right to procedural due process. He contends that Kirsten will lose the opportunity to enroll at Rye Country Day this year if he does not confirm by August 31 that she will attend and that there would be little or no prospect of her being admitted at some later point. He argues that an injunction therefore is necessary by August 31. The motion has come before me in Part I in Judge Parker's absence.

Discussion
In order to prevail on a motion for a preliminary injunction, the applicant ordinarily must establish a threat of irreparable injury and that either (1) the applicant is likely to prevail on the merits, or (2) there are serious questions going to the merits and the balance of hardships tips decidedly in favor of the movant. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979).[1]
Plaintiff, in the Court's view, has established a threat of irreparable injury. It is undisputed on this record that admission to Rye Country Day School is highly competitive and that the failure of Kirsten to enroll within a relatively few days will result in the loss of her place this year and, in all likelihood, for at least several years to come. It is not for the Court to judge the comparative merits of Mamaroneck school system, where Kirsten will enroll absent judicial intervention, and Rye Country Day. Suffice it to say that the educational experiences offered by *161 different schools reasonably may be viewed as unique. In consequence, the loss of an opportunity to attend a particular school is irreparable injury in the sense that monetary damages cannot readily be fixed or, for that matter, compensate for the lost opportunity. But this is the only aspect of the Jackson Dairy test that plaintiff even arguably has met.
The thrust of plaintiff's application is that Justice Ingrassia erred in deciding plaintiff's motion without holding an evidentiary hearing. By asking this Court to permit Kirsten to enroll at Rye Country Day "until such time as the New York State Supreme Court completes an evidentiary hearing in [the divorce] action and determines final custody of the plaintiff," the relief sought in the order to show cause, he is asking that this Court review the correctness of the State court order. This we may not do.
"The jurisdiction possessed by the District Courts is strictly original." Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). They have no power to review State court proceedings or to set aside State court orders. Mr. Foulke's only remedy with respect to Justice Ingrassia's order lies in review within the New York State court system and ultimately by the United States Supreme Court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-84 & n. 16, 103 S.Ct. 1303, 1314-16 & n. 16, 75 L.Ed.2d 206 (1983); Gentner v. Shulman, 55 F.3d 87, 88-89 (2d Cir.1995). In view of this principle, there is virtually no prospect that plaintiff will prevail in this action.[2]
Plaintiff's position would be flawed even if the Rooker-Feldman doctrine were not an obstacle. Under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, a federal district court should abstain from interfering with pending State litigation if (1) there is a pending State proceeding, (2) an important State interest is implicated, and (3) the plaintiff has an open avenue for review in the State courts of his constitutional claims. Gentner, 55 F.3d at 89-90. Here the existence of a pending State proceeding and of plaintiff's ability to raise his constitutional claims in State court are undisputed. The only possibly debatable question is whether there is a State interest sufficient to warrant abstention. And while the law in this area is not conclusively settled, it appears that the State's interest in adjudicating disputes relating to the family unit and in determining the nature of the procedures by which the State discharges that function are likely to be held sufficient to trigger Younger. See New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350, 365-66, 109 S.Ct. 2506, 2516-17, 105 L.Ed.2d 298 (1989) (State interest in regulating intrastate utility rates); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-14, 107 S.Ct. 1519, 1526-28, 95 L.Ed.2d 1 (1987) (State interest in regulating judicial procedures); Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (State interest in functioning of judicial system); Moore v. Sims, 442 U.S. 415, 434-35, 99 S.Ct. 2371, 2383-84, 60 L.Ed.2d 994 (1979) (State interest in child welfare matter); Juidice v. Vail, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) (State interest in regulating contempt procedure). In consequence, even if this Court were to conclude that it had subject matter jurisdiction, notwithstanding Rooker-Feldman, it probably would abstain under *162 Younger.[3]
Finally, it appears that there is little merit to plaintiff's due process claim. Plaintiff's constitutional grievance is the failure of the State court to hold an evidentiary hearing on plaintiff's State court motion. Yet it is undisputed that plaintiff never requested one. Hence, even if plaintiff was entitled to a hearing as a matter of federal constitutional law, he quite likely waived that right in the State court. See District of Columbia Court of Appeals, 460 U.S. at 482 n. 16, 103 S.Ct. at 1314 n. 16.
The Attorney General's office, which appears for Justice Ingrassia, argues also that the Court lacks subject matter jurisdiction under the domestic relations exception. There is no need to address that point in order to conclude that plaintiff has little prospect of success on the merits. Moreover, even if plaintiff had raised serious questions going to the merits, the Court nevertheless would deny the injunction.
In balancing the equities, the issue is whether plaintiff would suffer decidedly greater harm from an erroneous denial of an injunction than the defendants would suffer from an erroneous grant. Holford USA Ltd. v. Cherokee, Inc., 864 F.Supp. 364, 374 (S.D.N.Y.1994). In this case, that requires primarily consideration of the interests of Kirsten Foulke, who is the human subject of this drama, as well as those of the protaganists. As earnestly as Mr. Foulke asserts that Kirsten will be harmed irreparably by the loss of the opportunity to attend Rye Country Day, Mrs. Foulke's contention  accepted by the State court  that Kirsten would be harmed irreparably by a likely forced withdrawal cannot be dismissed out of hand. Moreover, plaintiff has come to federal court, without first seeking a stay from Justice Ingrassia or the Second Department, in a last minute effort to make an end run around the State court system. In all the circumstances, the equities do not militate in plaintiff's favor, much less decidedly so.
For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied. The cross-motion to dismiss on behalf of Justice Ingrassia  which doubtless soon will be joined by a motion to dismiss on behalf of the other defendants  will be referred to Judge Parker, to whom this case is assigned for all purposes, as there is no need for a decision on that application before Judge Parker again is available.
SO ORDERED.
NOTES
[1] The Attorney General argues that plaintiff must meet an even higher standard here, as the motion in his view seeks substantially all the relief to which plaintiff would be entitled were he to prevail on the merits. But there is no need to consider the Attorney General's contention, as the Court denies the motion even on the less exacting Jackson Dairy test.
[2] This Court is mindful of the possibility that the Rooker-Feldman doctrine may not preclude District Court "review" of State court actions that raise constitutional issues separable from and collateral to the merits of the State court judgment. Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1144 (2d Cir.1986), rev'd without consideration of the point, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Pennzoil Co., 481 U.S. at 18, 107 S.Ct. at 1529 (Scalia & O'Connor, JJ.) (concurring opinion); id. at 21, 107 S.Ct. at 1531 (Brennan & Marshall, JJ.) (concurring opinion). Here, however, this Court would have to consider the merits of plaintiff's argument that the State court erred in entering the very order in question. The merits of the pending State court appeal and of this motion are inextricably intertwined and therefore fall squarely within the Rooker-Feldman doctrine.
[3] Plaintiff cites a number of cases in support of his contention that Younger abstention is unwarranted. Traughber v. Beauchane, 760 F.2d 673 (6th Cir. 1985); Miofsky v. Superior Court of California, 703 F.2d 332 (9th Cir.1983); Henry v. First National Bank of Clarksdale, 595 F.2d 291 (5th Cir.1979), cert. denied sub nom., Claiborne Hardware Co. v. Henry, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); Johnson v. Kelly, 583 F.2d 1242 (3d Cir.1978); Diaz v. Stathis, 576 F.2d 9 (1st Cir.1978). All save Henry were based on one of two premises: that Younger abstention is inappropriate unless the State is a party to the underlying litigation or the underlying litigation is a criminal case. While the bounds of Younger's application in civil cases to which the State is not a party remain somewhat unclear, see 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 4254 (1988 & Supp.1995), the Supreme Court has rejected those two propositions as bright line tests. E.g., Pennzoil Co., 481 U.S. at 11, 107 S.Ct. at 1526; Middlesex County Ethics Committee, 457 U.S. at 432, 102 S.Ct. at 2521; Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); see New Orleans Pub. Serv., Inc. v. City of New Orleans, 798 F.2d 858, 863 (5th Cir.1986), cert. denied, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987) (declining to follow Johnson on this basis). The relevant criterion is the existence of an important State interest, a criterion that appears to be satisfied here for the reasons discussed in the text. Henry is distinguishable on the ground, inter alia, that the plaintiff there, unlike Mr. Foulke, had exhausted all State court avenues for vindicating his constitutional claims. 595 F.2d at 302.