**KHAL CHARIDIM KIRYAS JOEL, Zalman Waldman, Meyer Deutsch, and A.H. Weinstock, Plaintiffs,**

v.

**VILLAGE OF KIRYAS JOEL, Leopold Lefkowitz, Mayor and Abraham Weider, Deputy Mayor, Village of Kiryas Joel, Defendants.**

No. 95 Civ. 8378 (JSR).

United States District Court, S.D. New York.

Aug. 5, 1996.

452

Michael H. Sussman, Goshen, NY, for Plaintiffs.

Donald G. Nichol, Jacobowitz and Gubits, Walden, NY, for Defendants.

*OPINION AND ORDER*

RAKOFF, District Judge.

This case continues the curious, quarrelsome saga of Kiryas Joel, a religious enclave of Satmar Hasidim in Orange County, New York.

The Village of Kiryas Joel was incorporated in 1977 under the leadership of Grand Rebbe Joel Teitelbaum, who died without children in 1979. *See, Board of Education of Kiryas Joel School District v. Grumet,* 512 U.S. 687, ——, 114 S.Ct. 2481, 2485, 129 L.Ed.2d 546 (1994). Rabbi Moses Teitelbaum, a nephew of Grand Rebbe Joel, thereupon assumed the title of Grand Rebbe and designated his oldest son, Rabbi Aaron Teitelbaum, as Chief Rabbi. In response, a dissident faction under the aegis of Grand Rebbe Joel's widow, Feige, formed a separate religious corporation, Khal Charidim Kiryas Joel. According to the Complaint in this case, the members of this dissident sect were "banished from the founding synagogue in Kiryas Joel and subject to physical and verbal attack for their refusal to accept and adhere to the dictates of Rabbi Aaron Teitelbaum." Complaint, ¶ 13.

The Khal Charidim sect set up headquarters at a former private residence at 3 Van Buren Street (across the street from the Village Hall) and sought to utilize those premises for religious services by constructing an addition sufficient to hold the congregation. Their efforts to thereby convert the premises at 3 Van Buren Street into a synagogue immediately embroiled them in building and zoning controversies with officials of the Village, controversies that soon boiled over into the courts of the State of New York.

In June and July, 1995, the New York State Supreme Court, Orange County, preliminarily enjoined Khal Charidim from further construction, use and occupancy of the partly-constructed premises at 3 Van Buren Street; but in January, 1996, the same Court (per Owen, J.) struck down a local law enacted by the Village in 1993 that had been utilized by the Village's trustees to declare the premises in violation the New York Uniform Fire Prevention and Building Code. *See In re Khal Charidim Kiryas Joel et al.,*

*v. Village of Kiryas Joel and Dennis Vacco, Attorney General of the State of New York,* Supreme Court, Orange County, Index # 2147/95, Short Form Order, January 19, 1996, at 9–10. Justice Owen—while declaring permanent the prior injunction pending a determination by the Village of whether or not to approve Khal Charidim's application to construct the addition at 3 Van Buren Street—also directed Village officials to act diligently in rendering decision on Khal Charidim's zoning application. But this direction was, in turn, effectively nullified two months later when the New York State Supreme Court, Albany County (per Harris, J.), acting at the behest of certain individual Village complainants (who had commenced what Khal Charidim alleges was a collusive lawsuit against the Village), preliminarily enjoined the Village from acting on Khal Charidim's zoning application. These and other state court proceedings evidencing the bitter nature of the controversy continue presently and give no indication of abating.

Meanwhile, on October 2, 1995, Khal Charidim and three of its prominent members (two of whom were not parties to the state proceedings) brought the instant suit in federal court against the Village of Kiryas Joel and its officials, alleging that defendants had violated the First and Fourteenth Amendments of the United States Constitution by denying plaintiffs, *inter alia,* the free exercise of religion, the right to freely assemble, the equal protection of the law, and the right to due process. By way of relief, plaintiffs sought substantial monetary damages and a general injunction prohibiting defendants from interfering with plaintiffs' use of 3 Van Buren Street as a facility for religious worship. They also asked the Court to "deem" the plaintiffs to have conformed with the building and fire codes of the State of New York, to require the Village to issue a Certificate of Occupancy to the plaintiff congregation, and to strike down as unconstitutional the provision of the Village zoning ordinance that requires that any building functioning as a synagogue or place of worship be on a minimum of two acres.

Defendants promptly moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing, in essence, that plaintiffs' claims had been, must be, or should be determined in the ongoing state proceedings, rather than in this Court. Specifically, defendants argued that the Court either lacks subject matter jurisdiction under the so-called *Rooker–Feldman* doctrine or should dismiss the suit as a matter of discretion under the so-called *Colorado River* doctrine, and further that plaintiffs' claims for injunctive relief are barred by principles of collateral estoppel and res judicata.

After the motion was fully briefed by both sides, the Court held extensive oral argument on May 14, 1996.[1] The following day, by telephone conference with all counsel, the Court denied the motion to dismiss the claims for damages, reserved decision with respect to the prayers for injunctive relief, directed that any evidentiary hearing on any remaining requests for injunctive relief be consolidated with the trial on the merits of the claims for damages, and directed that discovery proceed so as to have this case ready for trial by October 15, 1996. This opinion will elucidate and further refine these rulings.

---

1. Previously, the Court had heard arguments and had received voluminous legal and evidentiary submissions in connection with plaintiffs' requests for two restraining orders: an initial request, granted in early October, 1995 by the Hon. Barrington D. Parker, Jr. (to whom this case was initially assigned), restraining the defendants from interfering with plaintiffs' use of 3 Van Buren Street to hold Yom Kippur services, *see* Memorandum Order dated October 6, 1995; and a subsequent request, denied in early April, 1996 by this Court (to whom this case had been reassigned), seeking a similar restraint in connection with the Passover holidays, *see* Memorandum Order dated April 8, 1996. The

evidentiary materials submitted by the parties in connection with these earlier applications have been considered by the Court in connection with its determination of those issues raised by the instant motion that relate to subject matter jurisdiction under Rule 12(b)(1), *see, e.g., Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir.1986), but have been disregarded with respect to those issues that relate only to the alleged failure to state a claim under Rule 12(b)(6), *see Marshall County Health Care Authority v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993); *Katz v. Molic,* 128 F.R.D. 35, 38 (S.D.N.Y.1989).

454

It is axiomatic that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 415–416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Noting that the Complaint here was filed shortly after the Appellate Division had affirmed the initial orders of the Supreme Court, Orange County, enjoining Khal Charidim from construction, use and occupancy of the addition at 3 Van Buren Street, *see In re Khal Charidim Kiryas Joel, et al., v. Village of Kiryas Joel, et al.*, Appellate Division, 2d Dept., Decision and Order on Motion (July 28, 1995), and that the injunctive relief here sought is in various respects similar to relief denied plaintiff Khal Charidim in these prior state court proceedings, defendants argue that the instant lawsuit is simply a veiled attempt to get this Court to review the prior state judgments, in violation of the *Rooker–Feldman* doctrine.

An immediate objection to this argument is that the federal constitutional claims that are the gravamen of the instant action were neither raised in plaintiffs' state court pleadings nor adjudicated in the state court decisions on which defendants here rely. The underlying state court action, commenced by two of the plaintiffs here (Khal Charidim and A.H. Weinstock) in April, 1995 before Justice Owen, centered on the state law questions surrounding the alleged property rights of the present and former owners of the premises at 3 Van Buren Street (Khal Charidim and Mr. Weinstock) to construct an addition. Their Complaint raised three causes of action, all grounded in New York law, to wit: it sought a declaratory judgment that the Village's Local Law 2, which gave its legislative-like Board of Trustees judicial-like administrative powers over zoning proceedings, violated the New York State Constitution; it challenged the legality under New York law of certain penalties imposed by the Village Board for zoning violations; and it sought a stay of those penalties. The pleadings alleged none of the federal constitutional claims raised in the instant Complaint, nor

sought any of the monetary damages here claimed.

On the merits, Justice Owen granted the first claim, *In re Khal Charidim Kiryas Joel et al.*, Short Form Order, January 19, 1996 at 9, and has not yet finally determined the other claims (at least so far as this Court has been made aware). As part of the same litigation, however, Justice Owen, as previously mentioned, granted defendant's application to enjoin Khal Charidim from construction, use, or occupancy of the addition at 3 Van Buren Street pending approval of Khal Charidim's zoning application. *See In re Khal Charidim Kiryas Joel et al.*, Short Form Order, June 27, 1995 at 20; *In re Khal Charidim Kiryas Joel et al.*, Short Form Order, January 19, 1996 at 11. But in none of his decisions did Justice Owen purport to decide, directly or indirectly, the federal constitutional claims raised by the instant Complaint. On the contrary, when, following the filing of this federal Complaint, the state plaintiffs for the first time sought to make use of these federal-law arguments in opposition to defendants' request to make permanent the preliminary injunction previously granted, Justice Owen cut them off firmly, stating: "I understand from our conference that you made application to the Federal Court to bring out those issues which were never before me.... [Y]ou can cover those issues there, but you can't cover them in a proceeding where they are not even part of the proceeding, they are not in issue here." *In re Khal Charidim Kiryas Joel et al.*, Transcript, of October 2, 1995, at 14.

Defendants are thus reduced to arguing that this Court's consideration of the instant Complaint violates *Rooker–Feldman*, not because the state court decisions that denied some of the plaintiffs some of the injunctive relief they here seek were based on any determination of the federal constitutional claims that plaintiffs here raise, but because *either* the failure of the state plaintiffs to raise the federal claims in their state court pleadings, when they could have done so, should not provide a basis for escaping the *Rooker–Feldman* bar, *or* because the state law issues considered by the state court in its decisions are so "inextricably intertwined"

with the federal issues raised here that a court could not determine the federal claims without effectively reviewing the state claims.

Neither of these arguments is persuasive. The first was squarely rejected by the Second Circuit in *Texaco, Inc. v. Pennzoil Company,* 784 F.2d 1133 (2d Cir.1986), *rev'd. on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), where the Court of Appeals stated (at 1144):

> Pennzoil contends that Texaco's claims are barred because *Rooker–Feldman* should be read broadly to preclude federal review of issues which a party could have raised in the state court proceeding, but chose to withhold from the state court. We disagree.

> Aside from the absence of any support for Pennzoil's theory in any decision applying Rooker–Feldman, the theory would read 28 U.S.C. § 1257 to severely impair, perhaps negate, a litigant's right to gain equitable or other relief under 42 U.S.C. § 1983, ... since most claims under § 1983, especially requests to enjoin ongoing state proceedings, could be raised in a related state proceeding. To relegate the § 1983 claimant in such cases to the state court would ignore Congress' purpose in adopting that statute. Section 1983 was intended 'to provide dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief.' *Patsy v. Florida Board of Regents,* 457 U.S. 496 [102 S.Ct. 2557, 73 L.Ed.2d 172] (1982).... Indeed, the Court has recognized, in the context of criminal proceedings, that a litigant who is not collaterally estopped from raising a § 1983 claim, is not precluded from raising the same claim simply because he had an opportunity to raise it in an earlier state proceeding. *Haring v. Prosise,* 462 U.S. 306 [103 S.Ct. 2368, 76 L.Ed.2d 595] (1983).

■ As to the second argument, while it is true that the *Rooker–Feldman* doctrine precludes a federal district court from evaluating claims that are so "inextricably intertwined" with state court determinations as to necessitate review of the state court's decision, *see Feldman* at 482–83, n. 16, 103 S.Ct. at 1315, n. 16; *Neu v. Abrams,* 867 F.Supp.

236, 238 (S.D.N.Y.1994), the test is whether the federal district court would necessarily have to determine that the state court erred in order to find that the federal claims have merit. *See, e.g., Pennzoil Company, v. Texaco, Inc.* 481 U.S. at 25, 107 S.Ct. at 1533 (Marshall, J., concurring); *Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3d Cir.1994); *Brooks–Jones v. Jones,* 916 F.Supp. 280, 282 (S.D.N.Y.1996); *Foulke v. Foulke,* 896 F.Supp. 158, 161, n. 2 (S.D.N.Y.1995); *Fariello v. Campbell,* 860 F.Supp. 54, 65 (E.D.N.Y.1994). Here, the most that Justice Owen determined adverse to the state plaintiffs was that, under state law, they must be enjoined from proceeding with their construction and utilization of their proposed synagogue conversion until they received the requisite approvals from state bodies applying state law. A determination by this Court that Village officials, acting under color of law, have purposely sought to delay or deny those approvals or to otherwise utilize their official prerogatives, all in order to prevent plaintiffs from exercising their constitutional rights, is entirely consistent with Justice Owen's decisions and requires no determination whatever adverse to his.

■ The only exception to the foregoing analysis relates to request "(b)" of the Complaint's prayer for relief, which asks that the Court, "upon review of the facility [at 3 Van Buren Street] in light of appropriate substantive standards, deem plaintiff Congregation to have conformed with the fire and building codes and standards set by the State of New York and require defendant Village to issue a certificate of occupancy to said Congregation using the same standards it has applied in like cases[.]" Unlike the other relief sought in the Complaint, this item cannot reasonably be read as anything other than a request that this Court substitute its judgment of the substantive and procedural standards governing New York's fire and building codes and standards for the judgments previously reached or in the process of being reached by the New York State Supreme Court in the prior and ongoing state court litigations. To accede to such a request would violate not only the *Rooker–Feldman* doctrine of abstention but also per-

haps the *Burford* doctrine of abstention, because the adjudication of this particular claim in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern, *see Quackenbush v. Allstate Insurance Company,* —— U.S. ——, ——, 116 S.Ct. 1712, 1726, 135 L.Ed.2d 1 (1996). Accordingly, request "(b)" of the prayer for relief will be stricken from the Complaint.

For reasons not unlike those applicable to the *Rooker–Feldman* analysis, the Court must reject defendants' further contention that plaintiffs' federal claims are collaterally estopped by the state court determinations. While, under the constitutional requirement of Full Faith and Credit, a federal court must accord to a prior state adjudication the same degree of collateral estoppel effect as would be accorded under the law of the state where the adjudication was rendered, *see Colon v. Coughlin,* 58 F.3d 865, 869 n. 2 (2d Cir.1995), New York law requires issue preclusion, or collateral estoppel, only where, among other things, the prior judgment or determination *necessarily* decided the issue as to which preclusion is sought. *Giakoumelos v. Coughlin,* 88 F.3d 56, 58–60 (2d Cir.1996). For reasons already discussed in connection with the *Rooker–Feldman* doctrine, Justice Owen's decisions did not necessarily decide, or indeed decide at all, the federal issues now before this Court.

Res judicata, or claim preclusion, is a somewhat more difficult matter, however. Defendants concede that there can be no claim preclusion with respect to plaintiffs' claims for damages, since this remedy was not fully available in the state court proceedings. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). But this limitation does not apply to plaintiffs' claims for injunctive relief, which were fully available to the state plaintiffs in the state proceedings and in support of which those plaintiffs were free to plead their federal law contentions, though in fact they chose not to. *See generally, Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir. 1986); *Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981). Moreover, in contrast to the approach applicable under the *Rooker–Feldman* doctrine, principles of *res judicata,* under New York law, will bar all later injunctive claims that arise out of the same "factual grouping" as the original causes of action, even if predicated on different legal theories. *Id.*

Plaintiffs argue, however, that the state court's denials of their requests for the preliminary injunctive relief they now seek were not judgments of sufficient finality to meet the requirements of a *res judicata* bar. *See Goodheart Clothing Company, Inc., v. Laura Goodman Enterprises, Inc.,* 962 F.2d 268, 273–74 (2d Cir.1992). This is true as far as it goes, *id.,* but ignores the fact that, subsequent to the filing of this federal action but as part of the ongoing state proceedings, defendants successfully convinced Justice Owen to convert his earlier grant of preliminary relief into an order by which the plaintiffs "are *permanently* enjoined from the construction, use and occupancy of the addition on the subject premises pending application for and procurement of all required municipal approvals, permits and/or certificates." *In re Khal Charidim Kiryas Joel et al.,* Short Form Order January 19, 1996, at 2 (emphasis supplied).

Despite this facial finality, however, the determination of finality for purposes of claim preclusion requires a court to look at all the factors governing the nature of the decision, *see Lummus Company, v. Commonwealth Oil Refining Company, Inc.,* 297 F.2d 80, 89 (2d Cir.1961) (Friendly, J.). As previously noted, the state plaintiffs did not raise any federal claims with the state court when it entered its initial orders granting defendants the preliminary injunctive relief that the Appellate Division affirmed; but at that point the state court was ordering no more than the temporary preservation of the status quo. When, following remand from the Appellate Division, the state court held a (limited) hearing on the question of whether the preliminary injunction should be made "permanent" pending the Village's prompt determination of the state plaintiffs' request for approval of continued construction of the premises at 3 Van Buren Street, the state plaintiffs attempted to argue against such a

determination on the basis, *inter alia*, of their federal-law contentions that formed the basis for the instant action that had by this time been filed in federal court. But Justice Owen, as noted above, declined to entertain these arguments, not because they had been waived but because they were more properly before the federal court.

Likewise, when Justice Owen subsequently issued his decision and order declaring defendants' injunction "permanent"—pending prompt Village determination of plaintiffs' building and zoning applications—he immediately went on to state the following (in the text and appended footnote): "This holding is not, of course, designed to preclude proper judicial proceedings in the event defendant Village of Kiryas Joel is purposely dilatory of otherwise fails to comply with its duties regarding plaintiffs' applications.... [Fn] In fact, plaintiff Khal Charidim Kiryas Joel and certain individuals have apparently commenced a federal action in the United States District Court, Southern District of New York, alleging violations of their constitutional rights to freely exercise their religion and to peaceably assemble." *In re Khal Charidim Kiryas Joel et al.*, Short Form Order January 19, 1996, at 12. In context, this clearly appears to be an avowal by Justice Owen that his order was not intended to have any preclusive effect on either the issues raised in the federal lawsuit or the remedies that might fairly arise therefrom. Accordingly, no such preclusive effect should be given, at least prior to the fuller hearing here envisioned by the consolidation of the trial on the merits and the hearing on injunctive relief.[2]

■ Defendants' final argument is that, even if the Court is not required to dismiss the Complaint, it should exercise its discretion under the doctrine of *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) to dismiss the case in order to avoid piecemeal and duplicative litigation. Having carefully examined each of the relevant factors implicated by *Colorado River* and its progeny, the Court is unpersuaded that it should exercise its limited discretion to refrain from its otherwise "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush*, —— U.S. at ——, 116 S.Ct. at 1720. Unlike the case of *Telesco v. Telesco Fuel and Masons Materials, Inc.*, 765 F.2d 356 (2d Cir.1985), upon which defendants rely, the instant case does not concern the same legal issues that are the subject of the ongoing state court proceedings. On the contrary, as already explained, the state court has expressly excluded these issues from its consideration and has taken note of their pendency in this Court. Moreover, while there is some factual overlap, the federal issues largely concern factual allegations that were either entirely absent from, or only tangentially relevant to, the state court proceedings. In these circumstances, to adopt defendants' suggestion and dismiss this action so that the state plaintiffs could, for the first time, meaningfully raise these federal issues in state court would, far from conserving overall judicial resources, simply add new and complex levels of litigation to the state court proceedings.

In sum, for the foregoing reasons, as well as those previously stated from the bench, defendants' motions to dismiss are denied in all respects, except as they relate to request "(b)" of the Complaint's prayer for relief, which is hereby stricken. Further, the hearing on the remaining requests for injunctive relief is hereby consolidated with the trial on the merits of the claims for damages, which

---

**2.** As Justice Owen also noted, the federal action includes "certain individuals" who were not parties to the state proceeding. While these two individuals—Zalman Waldman and Meyer Deutsch—are trustees and incorporators of Kiryas Joel (Complaint, ¶ 2), they purport to bring suit here in their personal capacities; and the federal complaint—unlike the state court proceeding, which was focused on property rights of the present and former owners of 3 Van Buren Street—focuses on alleged unconstitutional in-

fringements of personal freedoms. At this preliminary stage of the case, it thus appears that in any case these two individual plaintiffs would not be barred by res judicata from seeking injunctive relief in this action, *see, e.g., Burgos* at 789; *Quartararo v. Catterson*, 917 F.Supp. 919, 941–42, n. 12 (E.D.N.Y.1996)—the only exception being, once again, request "(b)" of the prayer for relief, which on its face is sought only by Khal Charidim.

will be tried on or shortly after October 15, 1996.

SO ORDERED.