**David MARDEN, Plaintiff,**

v.

**John R. DININ, individually, Theodore Wyskida, individually, and the Town of Bedford, New York, Defendants.**

**No. 96 CIV. 8390 (BDP).**

United States District Court,
S.D. New York.

Sept. 23, 1998.

---

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiff David Marden, the former Police Chief of the Town of Bedford, New York (the "Town") has asserted claims against the defendants John R. Dinin, Theodore Wyskida (the "Individual Defendants") and the Town pursuant to 42 U.S.C. §§ 1983 and 1985 alleging violations of his First Amendment right to freedom of speech.

During the events giving rise to this suit, John R. Dinin was the elected Supervisor of the Town. Theodore Wyskida was a lieutenant in the Town's police department. The defendants have moved for dismissal of Marden's amended complaint on the basis, among others, that, Marden's claims are barred by collateral estoppel, and that under the *Rooker–Feldman* doctrine the Court lacks subject matter jurisdiction.[1] For the reasons that follow, the defendants' motion is granted.

### BACKGROUND

In considering a motion to dismiss a complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all the allegations contained in the complaint and construe them in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Wolff v. City of New York Financial Servs. Agency,* 939 F.Supp. 258, 263 (S.D.N.Y.1996). A court must dismiss an action pursuant to 12(b)(1) sua sponte or on motion if it lacks subject matter jurisdiction and pursuant to 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court may consider only 1) the facts stated on the face

Craig Dickenson, Lovett & Gould, White Plains, NY, for Plaintiff.

Judson K. Siebert, Keane & Beane, White Plains, NY, for Defendants Dinin and Wyskida.

Robert M. Lefland, Thomas M. Bona, P.C., White Plains, NY, for Defendant Town of Bedford.

1. The defendants also move to dismiss on the ground that the individual defendants are shielded by qualified immunity. Because of the Court's conclusion that dismissal is required by *Rooker–Feldman* and collateral estoppel, the defendants' other contention is not reached.

of the complaint, 2) documents appended to the complaint, 3) documents incorporated in the complaint by reference, and 4) matters of which judicial notice may be taken.[2] *ESI, Inc. v. Coastal Power Production Co.,* 995 F.Supp. 419, 429 (S.D.N.Y.1998) (citing *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993)). The following facts have been construed accordingly.

Marden was appointed a Town police officer in February 1970, and was promoted to Chief of Police in September 1982. On April 22, 1996, Dinin, as Town Supervisor, filed disciplinary charges against Marden containing eleven allegations of incompetence and misconduct. Marden was suspended with pay, pending the resolution of the charges.

The disciplinary process was governed by the Westchester Police Act. Under this Act, the charges are heard by a town board or local board of police commissioners. In Marden's case his charges were heard by the Town Board (the "Board"). Dinin, who, as Town Supervisor, ordinarily sat on the Board, recused himself for Marden's hearing. Marden filed an answer on April 29, 1996. In his answer, Marden generally denied the charges and contended that Dinin had improperly used his public office to pursue a "personal and political vendetta" against him, and to deprive him of his "civil rights as guaranteed by the Constitution."

The first seven charges filed by Dinin were dismissed by the Board as time barred on the motion of Marden's counsel. These charges included various allegations of incompetence and misconduct concerning statements made by Marden to Gannett Suburban Newspapers concerning the arrest of an officer on sexual abuse and molestation charges and his alleged subsequent suicide. The charges the Board specifically addressed concerned only Marden's refusal to attend Board meetings and his conduct with respect to providing Dinin with a requested report concerning an allegedly racially tainted February 1996 traffic stop (the "Traffic Stop Report").

The Board heard the charges against Marden in July 1996, during a six day hearing. At the hearing Marden was represented by counsel. In his opening statement to the Board, Marden's counsel stated, "the proof will show that Chief Marden continued at all times to act reasonably, lawfully and professionally, and that the charges of incompetence and misconduct are untrue and have absolutely no basis in fact and that, in fact, these charges are motivated by personal animosity and malice."

During the hearing, Marden's counsel introduced a memorandum from Marden's personnel file, by stating, "the relevancy of the document is with respect to a defense which was raised in the answer that defense—to wit, that the supervisor is pursuing a systematic plan or personal political vendetta against my client." Further, Marden was asked by his counsel in his direct examination, "[W]hat is the basis of your assertion that Mr. Dinin is pursuing a personal vendetta against you?" To which Marden responded, "I get the impression he does not wish to hear my comments. He only communicates with me when he has a directive. Whenever I respond other than to what he wants to hear, I hear the words insubordination." When Marden was asked in his direct examination if he had problems with Dinin concerning an incident involving a police officer who allegedly committed suicide, Marden answered:

Yes, I did. He was directing me—well, first of all, he told me to stop talking to the press, and that I objected to because it's my job to talk to the press. As provided in the rules and regulations, I am the chief executive of the police department and I'm supposed to maintain press relations for the department. By telling me to stop

**2.** The Court takes judicial notice of the Record on Review filed with the Appellate Division, Second Division in *Marden v. Town Board of the Town of Bedford,* Case No. 97–04428. See *Marcus v. AT & T Corp.,* 938 F.Supp. 1158, 1164–65 (S.D.N.Y.1996)(court may take judicial notice of public documents even if not included in or attached to the complaint). Further a court may take judicial notice of related judicial proceedings. See, e.g., *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 157; 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)(taking judicial notice of related cases between same parties).

talking to the press denied my right to free speech.

By decision dated October 15, 1996, the Board found Marden: (1) not guilty of misconduct in his refusal to attend Board meetings, (2) guilty of misconduct in his refusal to provide Dinin with copies of investigative work product related to the February 1996 traffic stop, and (3) not guilty of incompetence in his refusal to provide investigative work product to Dinin regarding the traffic stop. The Board specifically concluded that it:

does not find evidence in this record that the requests for the reports and the subsequent filing of charges were the result of any personal or political vendetta by the Supervisor against the Chief. The evidence indicates and the Board finds that the Chief was given several opportunities to comply with the request and to avoid this charge being filed. The evidence also indicates that the Chief was aware that disciplinary charges were being considered by the Supervisor with respect to this refusal and that he had the opportunity to avoid such a filing by complying with the request.

After reviewing submissions from Marden's counsel, Dinin's counsel and several character references, the Board, by "Findings and Determination of Penalty," dated November 4, 1996, unanimously decided to terminate Marden as Chief of Police.

Marden challenged his termination in an Article 78 proceeding filed on December 30, 1996 in Supreme Court, Westchester County. Plaintiff's Article 78 petition claimed the Board's determination was: (1) in violation of lawful procedure, and (2) arbitrary and capricious, and supported by insufficient evidence. Further, the petition contended that the Board had abused its discretion as to the penalty imposed.

The petition also alleged that Marden had been victimized by the Supervisor and the Board, who had acted in concert and under color of law to improperly terminate his employment and that the disciplinary process had been misused for retaliatory purposes. Marden further alleged that a disinterested trier of fact would be "hard-pressed" to con-

clude that the Board's decision was not personally motivated. Exhibits incorporated into the petition included the answer submitted by Marden to the Board, letters sent by Marden's counsel to Dinin and to the Board's counsels, and the official trial record. These incorporated documents included Marden's allegations that the charges against him were the result of a personal and political vendetta and constituted constitutional violations.

By decision dated April 23, 1997, the Supreme Court found that Marden had received a fair hearing and then deferred to the Appellate Division for a determination as to whether the Board's findings were supported by substantial evidence. On April 27, 1998, the Appellate Division held that the findings of the Board were supported by substantial evidence and that the penalty of dismissal was not excessively disproportionate to the offenses. The court concluded that Marden's remaining contentions were without merit.

Plaintiff commenced this action in November 8, 1996. Marden's amended complaint alleges a conspiracy by defendants to terminate him in retaliation for his exercise of his First Amendment rights to freedom of speech and to petition government for redress for grievances. Specifically, Marden contends that his criticism of the Westchester County District Attorney's investigation into charges of molestation and sexual abuse by a police officer and public comments made by Marden following the officer's alleged suicide prompted a series of retaliatory actions by the defendants, culminating in Marden's dismissal for minor acts of misconduct.

## DISCUSSION

### I. *Rooker–Feldman*

■ Under the *Rooker–Feldman* doctrine, district courts lack subject matter jurisdiction over cases that effectively seek review of state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Gentner v. Shulman,* 55 F.3d 87 (2d Cir.1995). The prohibition on district court review of state court judgments extends to cases that

are "inextricably intertwined" with a state court's determinations. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

Our Circuit recently applied *Rooker–Feldman* in *Moccio v. New York State Office of Court Administration,* 95 F.3d 195 (2d Cir. 1996). In *Moccio,* the plaintiff was terminated from his position in the New York State Office of Court Administration ("OCA") after having been found guilty, after a hearing, of certain disciplinary infractions. Moccio challenged his dismissal by filing an Article 78 petition. After a finding that the decision to terminate Moccio was supported by substantial evidence, his Article 78 petition was dismissed and his termination was upheld. *Moccio,* 95 F.3d at 197.

Moccio then filed a § 1983 action in federal court, alleging that the termination of his employment by the OCA violated the Fourteenth Amendment. Specifically, Moccio argued that the OCA violated due process by exercising its discretion to terminate him in an arbitrary and capricious manner, and violated equal protection by selectively sanctioning him for behavior for which other personnel was not punished. *Moccio,* 95 F.3d at 198.

■ The court explained that the *Rooker–Feldman* doctrine "is at least coextensive with the principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion)." *Moccio,* 95 F.3d at 199 (internal quotations omitted). Therefore, "a claim will be barred under the Rooker–Feldman doctrine if it would be barred under the principles of preclusion." *Moccio,* 95 F.3d at 200.

■ Collateral estoppel applies, under New York law, if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995). While the party seeking preclusion bears the burden of demonstrating that an issue in the current case was decided in a prior proceeding, the party resisting preclusion must demonstrate that he was denied a full and fair opportunity to litigate the issue in the prior proceeding. *Colon,* 58 F.3d at 869.

The *Moccio* court noted that in his Article 78 proceeding, Moccio did not raise, although he could have, the precise claims that were the subject of his § 1983 action. Nonetheless, the court concluded that it lacked jurisdiction over Moccio's § 1983 action because issues central to both his equal protection and due process claims were decided adversely to him in the Article 78 proceeding.

■ Similarly, Marden argues that this case involves issues not addressed in the Article 78 proceeding, specifically his constitutional claim alleging violations of the First Amendment. This assertion is misleading. Although Marden did not assert a claim precisely denominated as a First Amendment retaliation claim in the Article 78 proceeding, he did have the opportunity fully to litigate his contention that his dismissal was retaliatory, and hence unconstitutional, because of his involvement in protected political conduct. In Marden's answer to the disciplinary charges, for example, he alleged they were asserted because of a "personal and political vendetta" and in his Article 78 petition, he contended that his dismissal was retaliatory in nature and deprived him of his civil rights as guaranteed by the constitution.[3] The state court, concluded that Marden's dismissal was supported by substantial evidence and rejected Marden's other claims.

■ In determining whether the claims presented to the district court are inextricably intertwined with prior state court determinations, "the test is whether the federal district court would necessarily have to determine that the state court erred in order to

---

**3.** As noted *supra,* Marden also incorporated by reference his answer to the disciplinary charges to his Article 78 petition.

find that the federal claims have merit." *Khal Charidim Kiryas Joel v. Village of Kiryas Joel,* 935 F.Supp. 450, 455 (S.D.N.Y. 1996) (citing*Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)) (other citations omitted). Because Marden had an adequate opportunity to litigate the reasons for his discharge and, indeed, specifically asserted retaliation issues in his state court proceeding, a finding by this Court that Marden was in fact terminated in retaliation for engaging in constitutionally protected activities would necessarily contradict—and in effect overrule—the state court's conclusion that Marden's dismissal was for misconduct and was not the consequence of a political vendetta.

## II. *Collateral Estoppel*

Under New York law, as noted *supra,* collateral estoppel applies when the identical issue necessarily was decided in the prior action and will be decisive in the present action, and the party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior determination. *Doe v. Pfrommer,* 148 F.3d 73, 79 (2d Cir.1998)(citing *Juan C. v. R.C. Cortines,* 89 N.Y.2d 659, 667, 657 N.Y.S.2d 581, 679 N.E.2d 1061 (1997) (citation omitted)). Federal courts, of course, give to a New York state court judgment the same preclusive effect that New York state courts would give to it. *Migra v. Warren City School District,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In this case, the first prong of the collateral estoppel test is met because issues essential to plaintiff's First Amendment claim (i.e. the existence of a retaliatory scheme and the reasons for his discharge) were decided adversely to him in the prior proceeding.

The second prong of the collateral estoppel test is that the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Giakoumelos v. Coughlin, III,* 88 F.3d 56, 59 (2d Cir.1996) (citing *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 73, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). Constitutional claims may, of course, be heard in an Article 78 proceeding. *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996) (citing *Christ the King Reg. High Sch. v. Culvert,* 815 F.2d 219, 224–225 (2d Cir.1987)). In this case, Marden does not contend that he was deprived of an opportunity to litigate fully the circumstances of his dismissal, an issue essential to his First Amendment claim.

Our Circuit held in *Genova v. Town of Southampton,* 776 F.2d 1560 (2d Cir.1985) that a police officer who challenged his dismissal through an Article 78 proceeding was precluded from relitigating his claims in a federal forum. The court held that the gravamen of plaintiff's constitutional claims were that his superiors attempted to force him to file a false accident report and that he had made this argument, though not in constitutional terms, at his disciplinary hearing. The court concluded that the principles of collateral estoppel prevent a plaintiff from contesting the same factual issues in any later suit against the same parties. *Genova,* 776 F.2d at 1561.

Our Circuit's teaching in *Genova* applies with full force here. We conclude that in addition to being barred under *Rooker–Feldman,* Marden is collaterally estopped to relitigate in this Court the circumstances of his dismissal.

## CONCLUSION

For the reasons stated, the defendants' motion to dismiss is granted. The Court, however, declines to make an award of attorney's fees. The Clerk of the Court is directed to dismiss the complaint.[4]

## SO ORDERED.

---

4. The amended complaint mentions but does not      state a claim under 42 U.S.C. § 1985. Marden

generally alleges a § 1985 violation at the beginning of his amended complaint, but does not indicate which subsection he believes applies. Section 1985(1) and the first clause of § 1985(2) address conspiracies to prevent federal officers from discharging their duties and conspiracies to interfere with proceedings in federal courts, respectively. Since no federal officer is named in the amended complaint, Marden states no claim under these provisions. In order to proceed under § 1985(2), a plaintiff must allege a deprivation of rights on account of his membership in a protected class. Further, § 1985(3) prohibits conspiracies to deprive "either directly or indirectly, any person... of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Under § 1985(3) a "plaintiff must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'" *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Claims of conspiracy "'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993) (citation omitted). Marden has not asserted any membership in a protected class. Since Marden has not alleged any specific facts in his amended complaint to support his conspiracy claim pursuant to any subsection of 42 U.S.C. § 1985 and since the abundant state court record reveals none, we conclude his reference to § 1985 was an error.